## John S. Rose *vs.* Charles B. Kimball.

1. A deed of assignment endorsed upon a mortgage, though duly executed and acknowledged, passes no interest to the assignee, where the contract under which the assignment was executed, was never consummated, and the mortgage never delivered to the assignee.

2. A party taking by assignment from the first assignee, with constructive notice of prior equities, will stand in no better position than his assignor.

*P. L. Voorhees*, for complainant.

*Richey*, for defendant.

THE CHANCELLOR. The bill is filed to foreclose a mortgage for $4200, given by Henry S. Harper and wife to Spencer Shoemaker, and by Shoemaker assigned to the complainant. The mortgage is dated and acknowledged on the fifteenth of February, 1856, and recorded on the twenty-sixth of the same month. The assignment is dated and acknowledged on the fifth of August, 1857, and is recorded on the nineteenth of the same month. There is no question as to the formal execution and delivery of either instrument. The case, as made by the bill, is very clearly established by the evidence.

The defence is that Shoemaker, the mortgagee, previous

Q *

to the assignment by him to the complainant, had assigned the mortgage to one Enos P. Gibson, by whom it was subsequently assigned to Charles B. Kimball, one of the defendants. The controversy turns entirely upon the validity of this assignment to Gibson. There appears to have been endorsed upon the mortgage, a formal deed of assignment from Shoemaker and wife to Gibson, bearing date on the first day of March, 1856, purporting to have been executed in the presence of two witnesses, and to have been acknowledged on the fourteenth of the same month before a commissioner resident in the city of Philadelphia. This assignment and the acknowledgment are cancelled. The seals are torn off, the names are erased, and across the instrument are written the words, " this assignment not consummated."

Shoemaker, the mortgagee, testifies that at the date of the assignment to Rose, the complainant, he was the owner of the bond and mortgage, that they were in his possession, and that he had never before parted with their ownership. He admits the execution of the assignment upon the mortgage, but says that no consideration for the assignment was received, and that the mortgage was never delivered to Gibson; that Gibson was his partner in the business of conveyancing, and that the sale was made to a third party, who requested the assignment to be executed to Gibson. This was done accordingly, but the consideration agreed upon was not paid, and the contract never consummated.

It appears that on the eighteenth day of June, 1857, a bill was filed in this court in the name of Gibson, the assignee, which, so far as appears of record, is still pending. Shoemaker testifies that he placed the mortgage in the hands of the solicitor for collection, employed him as counsel, and paid him a retaining fee; that he afterwards procured the mortgage from the solicitor, and made the assignment to the complainant.

In confirmation of this statement, the solicitor testifies that he was employed by Shoemaker to foreclose the mortgage, and received a fee from him. That he filed the bill in

the name of Gibson, because there was an assignment upon the back of it to him, then uncancelled. That the suit was subsequently discontinued, or agreed to be discontinued, at Shoemaker's request, to whom the solicitor delivered the mortgage, and received from him payment of the taxed bill of costs. The bill of costs as taxed and paid by Shoemaker, includes the costs of discontinuing the suit. The solicitor further testifies that he knew no other person in the business but Shoemaker. That Gibson left the bond and mortgage at his office, saying that Shoemaker would call and instruct him what to do with them. That Shoemaker gave him the instructions to foreclose the mortgage, and that he did not know Gibson in the matter. That Shoemaker expressed surprise that the foreclosure was commenced in Gibson's name, and that the assignment upon the mortgage was cancelled by Shoemaker, on receiving it from the solicitor, and in his presence.

The bill of costs, referred to by the solicitor, was taxed and filed on the eighteenth of July, 1857. The assignment by Shoemaker to Rose, the complainant, was executed and acknowledged on the fifth of August following, and recorded on the nineteenth of the same month.

The instrument which is claimed to be an assignment from Gibson to Kimball, the defendant, bears date on the fifteenth of December, 1857, long after the assignment to the complainant had been recorded. Admitting therefore that he paid value for it, he took it with constructive notice of the assignment to the complainant. He took the assignment under circumstances which, if not decisive evidence of a fraudulent purpose, at least afford the strongest evidence that the transaction was not in good faith. The bond and mortgage were not in the hands, nor under the control of the assignor. The instrument of assignment is in the form of a notice to the solicitor, that Gibson thereby transferred all his interest in the mortgage for value received, and authorizes the transfer of the mortgage to Kimball, and the suit to be discontinued. When this instrument was in fact executed, does not appear

except from Gibson's own evidence. The subscribing witness is not produced. It was never acknowledged, but purports to have been recorded in the clerk's office of Camden county on the fourteenth of December, 1860, three years after its date. Kimball indeed swears that at the time of this assignment, the mortgage was in the hands of the solicitor, who was foreclosing it for Gibson. Now, not only the evidence of the solicitor, but the endorsements upon the mortgage itself, show that months previously, the mortgage had been delivered by the solicitor to Shoemaker, and had been by him assigned and transferred to Rose, the complainant. Kimball does not pretend that he ever saw the mortgage in the hands of the solicitor, and there is no apparent reason why the solicitor should ever have made the statements which Kimball alleges he did make.

The evidence of Kimball himself furnishes the strongest evidence, not only that the assignment from Gibson to him was procured in bad faith, but that the consideration paid for it, if any thing, was merely nominal. The entire mortgaged premises, consisting of over five hundred acres of land, were conveyed to Kimball for the sum of one dollar, and were expressly declared on the face of the deed to be subject to the complainant's mortgage. Haines bought the equity of redemption for one dollar. He now attempts to relieve the land from the burden of the mortgage for a nominal consideration. There is not the least evidence in the cause, independent of the testimony of Gibson, whose evidence is totally unreliable, and of Kimball himself, tending to show that he paid one dollar consideration for the mortgage. It is impossible to read Kimball's own evidence without a strong conviction that the consideration he paid was of no value. He testifies, indeed, that knowing all about the property, he gave $3000 for the assignment, and yet proves by a witness, who is not contradicted, that the property is not worth half the money.

The evidence renders it very probable that the mortgage was originally made and assigned for a dishonest

purpose, but I see no reason for supposing that Kimball ever had the least title to it, in law or in equity, nor any ground upon which the title of the complainant can be impeached, or his right to relief questioned.